IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TLC PROPERTIES, INC., and LAMAR ADVERTISING OF PENN, LLC,** : <br> : <br> **Plaintiffs** : <br> : <br> v. : <br> : <br> **PENNSYLVANIA DEPARTMENT OF TRANSPORTATION and YASSMIN GRAMIAN,**[1] **individually and in her capacity as Secretary of Transportation, acting as the Chief Executive Officer of the PENNSYLVANIA DEPARTMENT OF TRANSPORTATION,** : <br> : <br> **Defendants** : | **CIVIL ACTION NO. 1:21-CV-950** <br><br> **(Judge Conner)** |

# MEMORANDUM

Plaintiffs TLC Properties, Inc. ("TLC"), and Lamar Advertising of Penn, LLC ("Lamar Penn") (collectively "plaintiffs"), bring a Section 1983 action against defendants the Pennsylvania Department of Transportation ("PennDOT") and Secretary of Transportation Yassmin Gramian, in her official and individual capacities (collectively "defendants"). Defendants move to dismiss plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[1] We understand the correct spelling of the Commonwealth's Secretary of Transportation to be Yassmin Gramian.

I.   **Factual Background & Procedural History**

Plaintiffs TLC and Lamar Penn are both subsidiaries of Lamar Advertising Company and engaged in the business of outdoor advertising. (See Doc. 27 ¶¶ 6, 41). TLC paid $80,000 in 2008 to obtain a perpetual easement on a property located adjacent to the intersection of Interstate 83 and U.S. Route 462 in York County, Pennsylvania. (See Doc. 27-1 at 3-7; Doc. 27 ¶¶ 17-18, 20). The easement grants TLC (and its successors and assigns) the right to erect a billboard on the property. (See Doc. 27-1 at 3-7). The following year, Lamar Penn erected a digital billboard at the location defined by the easement. (See Doc. 27 ¶¶ 21, 25-26). TLC and Lamar Penn maintained ownership of the easement and billboard respectively until August of 2020. (See id. ¶¶ 14-15).

In August of 2020, PennDOT filed a declaration of taking against the easement and billboard in the Court of Common Pleas of York County. (See Doc. 27-1 at 29-36). The declaration of taking identifies TLC as owner of the easement and billboard; it makes no mention of Lamar Penn. (See id.; see also Doc. 27 ¶¶ 31-32). When PennDOT served TLC with the declaration, it provided TLC with a letter offering $10,000 in compensation for the easement and the option of receiving either a "moving cost payment" of $18,204.25 or a "tangible personal property loss payment" of $35,300 should TLC choose to abandon the billboard. (See Doc. 27 ¶ 28; Doc. 27-1 at 29). At some point before the instant litigation, PennDOT also provided plaintiffs with a document entitled "Bulletin 47" that purports to explain the rights of outdoor advertisers in the Commonwealth, including their rights under the Eminent Domain Code. (See Doc. 27 ¶¶ 135-143). Bulletin 47 describes

billboards as being classified as "personal property." (See Doc. 27-1 at 84). According to Bulletin 47, Pennsylvania law limits owners of billboards, taken via eminent domain, to the cost of relocating the billboard or the billboard's "value in place." (See id. at 76, 85-86). Pursuant to the declaration of taking, PennDOT took possession of both the easement and the billboard. (See Doc. 27 ¶¶ 29, 31-32).

Plaintiffs filed the instant action against PennDOT and Gramian, in her official and individual capacity, seeking compensation for defendants' taking of the easement and billboard. Plaintiffs later filed an amended complaint. Defendants now move to dismiss plaintiffs' amended complaint.

## II. Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

**B.     Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal

conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### III. Discussion

We construe plaintiffs' amended complaint as asserting a claim pursuant to Section 1983, alleging the taking of property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution, as well as Pennsylvania and federal law.[2]  (See Doc. 27 ¶¶ 52-66; see also Doc. 45 at 1-3, 7-8).  Defendants mount several attacks on plaintiffs' complaint, seeking dismissal for lack of standing and on both sovereign-immunity and abstention grounds.  We will address each of these contentions *seriatim*.

#### A. Article III Standing

As a threshold matter, defendants challenge plaintiffs' standing to bring this action.  (See Doc. 40 at 9-12).  Article III of the United States Constitution limits

---

[2] Plaintiffs' amended complaint references various federal laws, states laws, and state regulations, suggesting defendants' actions violated these authorities. (See e.g., Doc. 27 ¶¶ 85-95, 99-103, 107-34, 137-51).  Notwithstanding the statutory references, plaintiffs clarify in their amended complaint and opposition brief that, at bottom, their claim is based upon an unconstitutional taking.  (See Doc. 27 ¶¶ 52-53; Doc 45 at 1-3, 7).

5

federal court jurisdiction to "cases" or "controversies." See U.S. CONST. art. III, § 2. Establishing Article III standing requires a plaintiff to demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157-58 (2014) (internal quotation marks omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, (1992)).  To avoid impermissibly assessing the merits, a court must "assume for the purposes of [a] standing inquiry that a plaintiff has stated valid legal claims." See Cottrell v. Alcon Labs., 874 F.3d 154, 162 (3d Cir. 2017) (citation omitted).

Defendants primarily contend that plaintiffs lack an injury because the ongoing state-level eminent domain proceeding has not yet resulted in a final determination regarding the value of "just compensation" for the billboard. (See Doc. 40 at 10; Doc. 45 at 21). We disagree. A plaintiff sufficiently pleads injury in fact by claiming "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" See Spokeo, Inc. v. Robins, 578 U.S. 330, 339, as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560); Cottrell, 874 F.3d at 162-63. Plaintiffs allege defendants took their billboard and accompanying easement without just compensation. (See Doc. 27 ¶¶ 52-53). The taking of property by state actors without just compensation constitutes a violation of an individual's Fifth and

Fourteenth Amendment rights at the moment of the taking.[3]  See Knick v. Township of Scott, 588 U.S. ___, 139 S. Ct. 2162, 2168, 2179 (2019).  Plaintiffs are not required to exhaust state-law remedies or procedures before bringing an action seeking just compensation in federal court under Section 1983.  See id. at 2173, 2177, 2179.  Plaintiffs' injury is attributable to the actions of defendants who took the property in question by filing a declaration of taking.  See Susan B. Anthony List, 573 U.S. at 158.  Plaintiffs' injury is also redressable via the award of "just compensation" in the form of monetary damages.  See id.  Accordingly, we conclude plaintiffs demonstrate proper Article III standing.

**B.     Sovereign Immunity**

Defendants also seek to dismiss plaintiffs' claim on sovereign-immunity grounds.  (See Doc. 40 at 12-17).  Defendants' argument on this point fares better.  The Eleventh Amendment precludes private federal litigation against a state and its agencies.  See U.S. CONST. amend. XI; Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020).  Sovereign immunity extends to state officials sued in their official capacity because in such cases it is the entity the official represents that is the true party in interest.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71

---

[3] Defendants read plaintiffs' complaint as alleging the source of plaintiffs' injury is the potential application of the definitions of "just compensation" found in Bulletin 47 and 37 PA. CODE § 151.1.  (See Doc. 40 at 9-12).  We find this to be a misreading.  Plaintiffs' averments ground their injury firmly in the taking of the easement and billboard by defendants without just compensation.  (See Doc. 27 ¶¶ 14-39, 52-53).  The complaint even goes so far as to announce "[t]his case is all about the valuation of outdoor advertising signs in the context of eminent domain on the occasion of a taking of an outdoor advertising sign by the [d]efendants for expansion of a federal designated highway[]."  (See id. ¶ 52).

(1989); Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). In determining the applicability of sovereign immunity, we accept the allegations in the complaint as true. See Kalina v. Fletcher, 522 U.S. 118, 122 (1997) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 261 (1993)).

We note at the outset that PennDOT, as an agency of the Commonwealth, is presumptively protected by sovereign immunity. See Warner v. Pennsylvania, 569 F. App'x 70, 72 (3d Cir. 2014) (nonprecedential). Likewise, sovereign immunity presumptively protects Gramian, as Secretary of PennDOT, from suit in her official capacity. See Hafer, 502 U.S. at 25 (citing Graham, 473 U.S. at 166). Consequently, we must dismiss plaintiffs' claim against PennDOT and Gramian in her official capacity unless plaintiffs can show their lawsuit falls into one of the exceptions to sovereign immunity. See CNA v. United States, 535 F.3d 132, 145, as amended (Sept. 29, 2008). The three primary exceptions to sovereign immunity are as follows: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte Young*, 209 U.S. 123 (1908), a state official may be sued in their official capacity for prospective injunctive relief. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002).

Plaintiffs contend the Commonwealth (and thereby defendants) waived sovereign immunity regarding suits seeking just compensation for the taking of billboards for public use. (See Doc. 48 at 3-8). Courts "find waiver only where

stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" See Koslow, 302 F.3d at 172 (alteration in original) (quoting Edelman v. Jordan, 415 U.S. 651, 673 (1974)).  Nonetheless, a state may consent to suit when it accepts federal funding explicitly conditioned on the state waiving sovereign immunity.  See id. at 170 (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 247 (1985)).  Plaintiffs argue the Commonwealth consented to suit by accepting funding pursuant to the Highway Beautification Act of 1965 ("Beautification Act"), 23 U.S.C. 131 *et seq.*  (See Doc. 48 at 3).

Plaintiffs' theory is unavailing.  The Commonwealth does accept funds pursuant to the Beautification Act.  See 36 PA. STAT. AND CONS. STAT. ANN. § 2718.108 (authorizing entry into any agreement necessary to obtain funding under Beautification Act); (Doc. 48 at 17-28 (formal agreement accepting funds pursuant to Beautification Act)).  Nevertheless, waivers are "generally disfavored absent clear evidence" the waiver is intentional.  See Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193, 203 (3d Cir. 2008).  Accordingly, courts are instructed to "indulge every reasonable presumption against waiver."  See id. (quoting Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937)).  For example, our court of appeals has found that states waived sovereign immunity by accepting funding under the Rehabilitation Act of 1973 ("Rehab Act") because the Act explicitly states: "[a] state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of" the provision at issue. See Koslow, 302 F.3d at 169-172 (quoting, *inter alia*, 42 U.S.C. § 2000d-7(1)).

9

Plaintiffs point to no provision of the Beautification Act predicating funding on waiver of sovereign immunity. (See Doc. 48 at 3-6). Nor are we able to locate any such provision. Without "unambiguous" waiver language in the statute, we cannot find that the Commonwealth's acceptance of federal funds through the Beautification Act constitutes a waiver of sovereign immunity.[4] See Koslow, 302 F.3d at 170 (citing Lane v. Pena, 518 U.S. 187, 200 (1996)). We will dismiss plaintiffs' claims against PennDOT and Gramian in her official capacity for lack of subject matter jurisdiction.[5]

---

[4] Plaintiffs make two additional arguments regarding sovereign immunity. First, they contend that the Eminent Domain Code, 26 PA. CONS. STAT. § 101 *et seq.*, operates to waive sovereign immunity because it allows for inverse condemnation suits against the Commonwealth. (See Doc. 48 at 4-6 (citing, *inter alia*, 26 PA. CONS. STAT. § 502)). We reject this argument. "[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." Coll. Sav. Bank, 527 U.S. at 676 (citing Smith v. Reeves, 178 U.S. 436, 441-445 (1900)).

Second, Plaintiffs erroneously claim we have jurisdiction to hear this controversy under the Declaratory Judgement Act regardless of whether the parties are protected by Eleventh Amendment sovereign immunity. (See Doc. 48 at 9-10 (citing 28 U.S.C. § 2201)). The Declaratory Judgment Act does not create substantive rights and is not an independent source of federal jurisdiction. See Skelly Oil Co. v. Phillips Petrol. Co., 339 U.S. 667, 671-72 (1950); Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 281 n.4 (3d Cir. 2017). It merely provides a remedy for "controversies otherwise properly within the court's subject matter jurisdiction." See Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 394 (3d Cir. 2016). As we have shown, there is no underlying matter, at least regarding PennDOT and Gramian in her official capacity, properly within the court's jurisdiction. See id.

[5] Even if PennDOT and Gramian were unprotected by sovereign immunity, we would still dismiss plaintiffs' claims because neither PennDOT nor Gramian, in her official capacity, are "persons" under Section 1983. See Will, 491 U.S. at 71; Hafer, 502 U.S. at 25.

### C.     <u>Burford</u> Abstention

Sovereign immunity does not protect state officials sued in their individual capacity for monetary damages.  See <u>Est. of Lagano v. Bergen Cnty. Prosecutor's Off.</u>, 769 F.3d 850, 854 n.5 (3d Cir. 2014) (citing <u>Hafer</u>, 502 U.S. at 31)).  Accordingly, Gramian is potentially liable to plaintiffs, in her individual capacity, under Section 1983.  Nonetheless, defendants ask the court to abstain from hearing the instant action against Gramian under the <u>Burford</u> abstention doctrine.  (<u>See</u> Doc. 40 at 17).

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  <u>See</u> <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 821 (1976).  But this obligation is not absolute; in certain exceptional cases, a court may abstain from exercising its jurisdiction, even though such jurisdiction is properly conferred.  <u>See</u> <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996).  Abstention represents "a complex of consideration[s] designed to soften the tensions inherent in a system that contemplates parallel judicial processes."  <u>See</u> <u>Chiropractic Am. v. Lavecchia</u>, 180 F.3d 99, 103 (3d Cir. 1999) (quoting <u>Pennzoil Co. v Texaco, Inc.</u>, 481 U.S. 1, 11 n.9 (1987)).  In other words, abstention often represents a respect for comity, "or the idea that certain matters are of state concern to the point where federal courts should hesitate to intrude."  <u>See</u> <u>id.</u> (internal quotation marks and citation omitted).

The <u>Burford</u> abstention doctrine derives its name from its Supreme Court case of origin.  <u>See</u> <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943).  The doctrine empowers district courts to decline or postpone jurisdiction when a case poses "difficult questions" of state law or federal intervention risks disrupting state

11

administrative policy.  See New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI"), 491 U.S. 350, 361 (1989).  Our court of appeals has articulated a two-step analysis for Burford abstention.  See Lavecchia, 180 F.3d at 104.  First, district courts must consider whether "timely and adequate state-court review is available."  See id. (citing NOPSI, 491 U.S. at 361).  Second, the court must determine whether declining jurisdiction is appropriate by weighing the three factors articulated by the Lavecchia court.  See id. at 105.

### 1.     *Timeliness and Adequacy of State-Court Review*

In reviewing the timeliness and adequacy of state-court review, we "focus[] on whether the state courts have jurisdiction over the plaintiffs' claims, not on whether the state court [is] likely to decide the merits of their case."  See Phila. City Council v. Schweiker, 40 F. App'x 672, 679 n.5 (3d Cir. 2002) (nonprecedential) (citing Riley v. Simmons, 45 F.3d 764, 773 (3d Cir. 1995); Univ. of Md. at Balt. v. Peat Marwick Main & Co., 923 F.2d 265, 274-75 (3d Cir. 1991)).  Abstention may be particularly warranted when it enables a state court to issue a state-law decision, thereby avoiding an unnecessary constitutional decision by the federal court.  See Lavecchia, 180 F.3d at 103-04 (quoting Burford, 319 U.S. at 333 n.29 (citing City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 173 (1942))).

The matter *sub judice* is already the subject to an eminent domain proceeding in the Commonwealth.  (See Doc. 27-1 at 32-36; see also Doc. 40 at 23). The Commonwealth's Eminent Domain Code provides the "complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages."  26 PA. CONS. STAT. § 102.  The Code also guarantees

12

those subject to takings by the Commonwealth the same remedy as promised by the Fifth and Fourteenth Amendments: "just compensation." See id. § 701. Under the Code, aggrieved parties may petition for assessment of their property by "viewers," see id. §§ 502-505, and thereafter appeal to obtain a jury trial on the value of their property, see id. §§ 516-518.

Our court of appeals has found the Commonwealth's eminent domain procedures to be "substantial and highly-developed" and to "fully protect[] the rights of the property owner and guarantee[] to him the constitutional safeguards to which he is entitled, including appropriate appellate review." See Rucci, 130 F. App'x at 578 (quoting Coles v. City of Philadelphia, 145 F. Supp. 2d 646, 652 (E.D. Pa. 2001)). Plaintiffs offer no argument suggesting the Commonwealth's procedures are untimely, unfair, or otherwise inadequate. They merely express anxiety that the Commonwealth court *might* calculate "just compensation" for a billboard in a constitutionally deficient manner. The raising of constitutional questions does not indicate a state's procedures are inadequate. See Lavecchia, 180 F.3d at 107. We see no special reason plaintiffs cannot adequately contest the Commonwealth's definition of "just compensation" regarding billboards before the fair and learned judges of the Commonwealth. The first prong is satisfied.

### 2. *Lavecchia Factors*

We now consider the three Lavecchia factors: (1) "whether the particular regulatory scheme involves a matter of substantial public concern," (2) whether it is the sort of "complex, technical regulatory scheme" to which courts usually apply the Burford doctrine, and (3) "whether federal review of a party's claims would

13

interfere with the state's efforts to establish and maintain a coherent regulatory policy." See id. (quoting Felmeister v. Off. of Att'y Ethics, 856 F.2d 529, 534 (3d Cir. 1988)) (citing NOPSI, 491 U.S. at 361).

### a. Substantial Public Concern

Eminent domain is an area of law "intimately involved" with a state's "sovereign prerogative." See La. Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28 (1959). Hence, the Commonwealth's eminent domain laws, regulations, and procedures are clearly matters of substantial public concern. See NOPSI, 491 U.S. at 361.

Plaintiffs' challenge to the regulatory structure governing eminent domain in the Commonwealth raises "difficult questions" regarding that area of substantial public concern. See NOPSI, 491 U.S. at 361. Namely, plaintiffs challenge (1) PennDOT's interpretation of the Eminent Domain Code categorizing billboards as "personal property,"[6] (see Doc. 45 at 16); and (2) the regulation defining "value in place," the measure of valuation applied to personal property, so as to not account for the fair market value of the personal property in question, (see Doc. 45 at 17 (citing 37 PA. CODE § 151.1)). Plaintiffs contend that by so limiting the compensation available for takings of billboards, the Commonwealth's regulatory structure violates the Beautification Act, the Fifth and Fourteenth Amendments of the United

---

[6] Plaintiffs' only source for this interpretation is Bulletin 47. (See Doc. 45 at 17-18). The legal significance of Bulletin 47 is unclear to the court. Nonetheless, the defendants never contest the accuracy of plaintiffs' belief that the regulatory structure governing eminent domain in the Commonwealth views billboards as personal property.

14

States Constitution, and Article I of the Commonwealth Constitution.  (See id. at 17-21).

The Commonwealth's eminent domain laws, regulations, and procedures are a complex legal structure designed to facilitate the exercise of a vital state power and protect an equally vital right.  See Lavecchia, 180 F.3d at 106, 108.  Plaintiffs' statutory and constitutional contentions implicate virtually every highway expansion project undertaken by the Commonwealth.  Asserting jurisdiction in this matter would necessarily usurp the sovereign authority of the Commonwealth in an area of substantial public concern.  The first Lavecchia factor supports abstention.

### b. Usual Application

Eminent domain is a "distinctly state law matter," see Rucci, 130 F. App'x at 577 (citing, *inter alia*, Coles v. Street, 38 F. App'x 829, 831 (3d Cir. 2002) (nonprecedential)), to which courts consistently hold Burford abstention apples, see Grode, 8 F.3d at 956 (citing Ahrensfeld v. Stephens, 528 F.2d 193 (7th Cir. 1975)); Rucci, 130 F. App'x at 577 (citation omitted) (nonprecedential)); see also Thibodaux, 360 U.S. at 28-29, 31 (upholding abstention from action involving eminent domain when state law was unsettled).  The second Lavecchia factor supports abstention.

### c. Interference with Regulatory Policy

Addressing the merits of plaintiffs' claims would inherently interfere with the Commonwealth's eminent domain policies.  See NOPSI, 491 U.S. at 361.  Plaintiffs specifically ask us to preempt the ongoing state-level eminent domain proceeding before, so far as this court is aware, a Pennsylvania court has had an opportunity to determine a final valuation for plaintiffs' property or address plaintiffs' statutory

and constitutional claims. (See Doc. 27 ¶¶ 173-75; see also Doc. 40 at 10; Doc. 45 at 21). Any decision our court might arrive at on the proper valuation of billboards would risk inconsistency with how the Commonwealth's courts might resolve the same legal questions. Furthermore, should other courts follow our lead and usurp the prerogative of Commonwealth institutions to decide "just compensation" for takings, see NOPSI, 491 U.S. at 361; 26 PA. CONS. STAT. §§ 502-505, the Commonwealth could lose control over this "distinctly state law matter," see Rucci, 130 F. App'x at 577. The third Lavecchia factor supports abstention.

After careful consideration of the factors relevant to Burford abstention, the available eminent domain procedures in the Commonwealth, and the public policy implications of any intervention by this court for Commonwealth eminent domain policy, we will abstain from hearing plaintiffs' action against Gramian in her individual capacity. Consequently, we will dismiss plaintiffs' claim against Gramian in her official capacity under Rule 12(b)(6) without prejudice.[7]

## IV. Conclusion

For all of the above reasons, we find we lack subject matter jurisdiction over plaintiffs' action against PennDOT and Gramian in her official capacity and that Burford abstention is warranted regarding plaintiffs' claim against Gramian in her

---

[7] Our court of appeals holds that "abstention is a judicially created doctrine," see Hi Tech Trans, LLC v. New Jersey, 382 F.3d 295, 303 (3d Cir. 2004), and "does not present a jurisdictional issue," see Winston ex rel. Winston v. Child. & Youth Servs., 948 F.2d 1380, 1384 (3d Cir. 1991). Hence, we dismiss the claim under Rule 12(b)(6) instead of Rule 12(b)(1).

individual capacity. We will grant defendants' motion and dismiss plaintiffs' complaint. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   July 12, 2022